## APA, INC.

v.

## FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION.

### Civ. A. No. 82–0242.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

May 13, 1983.

Randall E. Roach, Leithead, Scott, Boudreau, Myrick & Richard, Lake Charles, La., for plaintiff.

John Gunther, Washington, D.C., James C. Gulotta, Jr., Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for defendant.

## OPINION

VERNON, District Judge.

This case has been submitted to the court for decision based on briefs, deposition testimony, and stipulations of fact. The pertinent factual background may be recited briefly. The plaintiff, APA, acted as the real estate agent for the defendant, Federal Savings & Loan Insurance Corporation (FSLIC), in the sale of certain property. APA brought together the defendant and a willing purchaser (Martin) who executed a Buy-Sell Agreement containing the following language:

> Seller represents to buyer that its agent in this transaction is A.P.A., INC. The seller agrees to pay, at the time of closing, 4% of the total sales price as a real estate commission. Buyer represents to seller that he has dealt with no other broker in connection with this offer to purchase the subject property.

Before the closing of the transaction, Martin backed out of the deal. In response, the FSLIC followed two courses of action. First, they placed Martin in default of the Buy-Sell Agreement. Second, they readvertised the property for sale. The sale price actually realized by the defendant was $100,000 greater than that which was agreed to by Martin. Consequently, the FSLIC dismissed its action against Martin for default of the Buy-Sell Agreement. Notwithstanding the facts that Martin defaulted on the agreement, and that the eventual purchaser of the property was not found by APA, that corporation is now attempting to recover the brokerage fee of 4% (or $50,000) referenced in the above-quoted language from the Buy-Sell Agreement.

Before reaching the merits of this case, the defendant has raised a jurisdictional argument which must be addressed. As the defendant has noted, the FSLIC is an agency of the United States Government. Furthermore, the defendant alleges that it entered into a contract with APA, the effects of which contract are now in dispute. Therefore, the court must consider the applicability of the Contract Disputes Act (The Act), 41 U.S.C. §§ 601, et seq. The applicability of The Act is clearly set forth in § 602.

602. Applicability of law

Executive agency contracts

Unless otherwise specifically provided herein, this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of Title 28) entered into by an executive agency for—

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

(3) the procurement of construction, alteration, repair or maintenance of real property; or

(4) the disposal of personal property.

In determining whether this case must be decided using The Act, there are two preliminary questions dictated to the court by § 602. First, it must be determined whether the FSLIC falls within the meaning of the term "executive agency" as set forth in § 601. Second, it must be determined whether "an express or implied contract" for one of the four enumerated contract objectives was entered into.

■ As to the first of these questions, the FSLIC is an "executive agency." In § 601(2), The Act defines "executive agency" as "... a wholly owned Government corporation as defined by section 846 of

Title 31, ...." 31 U.S.C. § 846 expressly names the FSLIC in a listing of wholly owned Government corporations. Therefore, the defendant is an executive agency within the meaning of The Act.

■ Turning to the second question regarding the existence of a contract, the court finds that an agency contract plainly existed between the defendant and APA. Not only does the previously quoted provision from the Buy-Sell Agreement support this position, but the deposition testimony of Anthony J. Starinieri of the FSLIC indicates the clear existence of a contract between the FSLIC & APA as well.[1] Even if APA's agency was not exclusive,[2] and even if they were not authorized to actually sell the property,[3] APA was in a position to receive monetary compensation for producing the eventual purchaser of the property. There is no question that an agreement was reached as to the object of the contract and the price to be paid.

In pondering exactly what constitutes the object of the disputed contract, the court has examined the contract in light of the four contractual objectives enumerated in § 602. That is, The Act will be applicable if the contract was entered into for the purpose of:

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

(3) the procurement of construction, alteration, repair or maintenance of real property; or

(4) the disposal of personal property.

■ Of these four possibilities, the plaintiff would have the court find that the contract was one for the procurement of real property. If that was the case, The Act would be inapplicable as set forth in

1. The deposition of Mr. Starinieri by counsel for APA contains the following exchange:

Q. Okay. So the point I'm trying to make is, is that in the course of the negotiations, the eventual negotiations, between the FSLIC and Robert Martin and his brothers, that A.P.A., Inc. was authorized to conduct those negotiations and did so with your approval?

A. Yes. I would say, yes.
Deposition p. 14.

2. Starinieri deposition p. 12.

3. Ibid.

§ 602(a)(1). Such an argument appears to have merit because FSLIC was selling real estate. Appearances however may be deceiving. For one thing, FSLIC was not attempting to "procure" real property, but rather, to sell such property. More importantly, the contract in dispute was one for the procurement of services, under which the plaintiff was to locate a purchaser for FSLIC's property. The contract involving the actual sale of property is not in dispute here. FSLIC is refusing to pay APA the $50,000.00 brokerage fee because the sale was in no way facilitated by the actions of APA. In short, FSLIC's position stems from the plaintiff's failure to provide any brokerage services which lead to the sale of the property. Therefore, the court finds that this suit involves a contract with an executive agency regarding the procurement of services as set forth in 41 U.S.C. § 602(a)(2).

■ With the finding that The Act is applicable to the facts before the court, our inquiry is nearly over. For a determination that The Act is applicable, *ipso facto,* compels the court to conclude that it lacks jurisdiction to preside over this suit. The proper course of action for a party plaintiff to follow when engaged in a contract dispute with an executive agency is clearly outlined by The Act. First, a claim must be filed with the agency's "contracting officer." § 605(a). Decisions of the contracting officer are appealable to "Agency Boards," § 607(d), and from there to the Court of Appeals, § 607(g). Or, in the alternative, decisions of contracting officers can be appealed directly to the United States Claims Court. § 609(a)(1). Nowhere in The Act are provisions made for the district courts to ever hear government contract dispute cases.

The Contract Disputes Act specifically states that it applies to any government contract case. § 602(a). Therefore, this statute being more specific than other general jurisdictional statutes cited by the plaintiff, The Act's jurisdictional strictures must be adhered to. This court lacks jurisdiction to hear this matter.

Other issues such as ripeness and failure to exhaust administrative remedies have been raised by the defendant. These arguments may have merit, but the court expresses no opinion as to these arguments.

In view of the court's finding that it lacks jurisdiction, it is hereby ordered that the plaintiff's suit be dismissed.